BARBARA KATRINA HASSELL, Employee v. ONSLOW COUNTY BOARD OF EDUCA-
TION, Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, INC.),
Third-Party Administrator

No. 172A07

(Filed 12 June 2008)

**1. Workers' Compensation— fault—inappropriateness**

Fault has no place in the workers' compensation system,
except as expressly provided by statute. In a workers' compen-
sation action involving a teacher who claimed compensation for
generalized anxiety disorder, any language in a finding implying
that plaintiff's fault or responsibility for her condition plays a role
in determining the compensability of the claim is irrelevant, inap-
propriate, and disavowed.

**2. Workers' Compensation— testimony of psychologist—af-
forded little weight**

The Industrial Commission in a workers' compensation case
did not improperly ignore a psychologist's opinion. The
Commission considered the expert's testimony but decided to
afford it little weight, as it may do.

**3. Workers' Compensation— finding about testimony—sup-
ported by evidence**

The Industrial Commission's finding in a workers' compensa-
tion case concerning the testimony of plaintiff's psychologist was
supported by competent evidence.

**4. Workers' Compensation— teacher—generalized anxiety
disorder—occupational disease—not proven**

The Industrial Commission did not err in a workers' compen-
sation case by concluding that a teacher did not prove that her
mental illness was due to causes and conditions peculiar to her
employment where the Commission had decided not to accept
her psychologist's opinions. Without those opinions, plaintiff had
no expert evidence to establish that her generalized anxiety dis-
order was an occupational disease.

Justice TIMMONS-GOODSON dissenting

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a
divided panel of the Court of Appeals, 182 N.C. App. 1, 641 S.E.2d 324

(2007), affirming an opinion and award filed on 5 October 2005 by the North Carolina Industrial Commission. Heard in the Supreme Court 17 October 2007.

*Ralph T. Bryant, Jr., P.A., by Ralph T. Bryant, Jr., for plaintiff-appellant.*[1]

*Roy Cooper, Attorney General, by John F. Maddrey, Assistant Solicitor General, for defendant-appellee Onslow County Board of Education.*

*George W. Lennon for the North Carolina Academy of Trial Lawyers, amicus curiae.*

HUDSON, Justice.

Plaintiff employee challenges the Industrial Commission's ("Commission's") determination that she is not entitled to workers' compensation benefits because her "generalized anxiety disorder" ("GAD") is not an occupational disease pursuant to N.C.G.S. § 97-53(13). Guided by the well-established standard of appellate review, we hold that the Commission properly concluded that plaintiff's condition is not an occupational disease because she failed to prove either that her work increased her risk of GAD or significantly contributed to it. Consequently, we affirm the denial of the claim.

From 1987 until February 2002, plaintiff was employed by the Onslow County Board of Education ("defendant") as a school teacher. Plaintiff worked at the elementary school level until approximately 1996, when she began teaching at Dixon Middle School ("Dixon Middle"). During her time at Dixon Middle, plaintiff consistently had problems managing the classroom and maintaining order, which other teachers of the same students did not have. Plaintiff dreaded going to work because of student disciplinary problems and student disrespect for her, which included verbal and physical harassment. Parents and students complained to the administration about plaintiff's performance as a teacher.

Over the course of her employment at Dixon Middle, plaintiff received numerous negative performance reviews and was required to enter into four "action plans," which are mandated by law when a teacher ranks below the standard in any of the major teaching

---

1. By order filed 7 May 2008, this Court allowed Mr. Bryant to withdraw as counsel for plaintiff.

functions. On 25 January 2002, plaintiff began her fourth action plan with defendant.

On 25 February 2002, a curriculum specialist observed plaintiff's classroom and determined that plaintiff had failed to show improvement in the quality of her classroom instruction. In addition, plaintiff failed to submit timely information to the administration and missed a meeting with Dixon Middle's principal to address these problems.

A few days later, the principal instructed plaintiff to continue working toward improving her classroom performance and told her that she was going to share the results of their meeting with the personnel department. The principal also asked plaintiff to sign a warning letter; plaintiff refused, left the school, and never returned to work. On 19 April 2002, plaintiff officially resigned her position with defendant, effective 3 June 2002.

In March 2002 psychologist Dennis Chestnut ("Dr. Chestnut") examined plaintiff. Dr. Chestnut found that plaintiff was experiencing a severe emotional crisis, and he considered hospitalizing her. He diagnosed her with GAD, medically excused her from work, and stated that she was unable to return to teaching. Dr. Chestnut continued to treat plaintiff on an ongoing basis. He stated that in his opinion, plaintiff's " 'job was driving her crazy' " and that her work experience was a major stressor in her life.

Before the Commission, plaintiff contended that her GAD was an occupational disease caused by a hostile and abusive classroom environment. The Commission disagreed, concluding that "plaintiff did not prove that her [GAD] is due to causes and conditions which are characteristic of and peculiar to her employment," and thus, her GAD was not compensable as an occupational disease. Plaintiff appealed.

In the Court of Appeals, plaintiff argued that her GAD was compensable as an occupational disease and that the evidence did not support certain of the Commission's findings of fact. She argued further that these findings did not support the Commission's conclusion of law that she failed to prove that her GAD was an occupational disease. Instead, plaintiff contended that the Commission should have found that her GAD was an occupational disease which arose from an abusive and dangerous work environment. In a divided opinion, the Court of Appeals affirmed the Commission's opinion and award. *Hassell v. Onslow Cty. Bd. of Educ.*, 182 N.C. App. 1, 12, 641 S.E.2d 324, 331 (2007). The majority upheld all of the Commission's factual

findings and conclusions of law and determined that plaintiff had failed to prove that her position as a teacher at Dixon Middle "placed her at an increased risk of developing an occupational disease" or that her work was a significant contributing factor in the development of her illness. *Id.* at 11-12, 641 S.E.2d at 331.

In his dissent, Judge Wynn agreed with plaintiff that the Commission "erred by finding that her employment at Dixon Middle School did not place her at an increased risk of developing an anxiety disorder" and by concluding that plaintiff's GAD was not compensable as an occupational disease. *Id.* at 12, 641 S.E.2d at 331-32 (Wynn, J., dissenting). The dissent expressed concern that the Commission improperly implied that the test of compensation involves "apportioning blame," and Judge Wynn further concluded that certain findings of fact made by the Commission were not supported by any competent evidence, to wit: (1) that plaintiff's "anxiety centered around her principal"; and (2) that the work/classroom environment was caused by plaintiff's "inadequate" job performance and thus resulted from her failings as a teacher. *Id.* at 13-14, 641 S.E.2d at 332. Although specific findings of fact are not discussed in the dissent, the matters addressed by the dissent are raised primarily in findings eleven, twelve, and thirteen, which are quoted below:

11. Dr. Chestnut explained that plaintiff's anxiety focused on her difficulty with the principal.

[Plaintiff] had gotten a new administrator, and she felt that the new administrator was not supportive of her . . . the new administrator did not feel that [plaintiff] was doing a good job, and that regardless of how hard she worked or regardless of what she did, that the administrator was going to find something wrong with it. . . . [S]he felt that the administrator was not supportive when she made decisions in reference to students. (Brackets in original.)

Dr. Chestnut testified that the overall job quality of plaintiff's work experience exacerbated and/or caused her generalized anxiety. Yet, Dr. Chestnut also testified that in mental health, experts do not necessarily speak of correlation or causation. Dr. Chestnut stated that AXIS evaluations were designed to be able to make a deferential diagnosis rather than to get into causality or correlation. Dr. Chestnut did state that plaintiff's employment with defendant exposed her to an increased risk of developing an anxiety disorder as compared to members of the general public not so

**HASSELL v. ONSLOW CTY. BD. OF EDUC.**

[362 N.C. 299 (2008)]

employed. Dr. Chestnut stated that plaintiff's "job was driving her crazy" and that plaintiff's total job experience was a major stressor in her life. Dr. Chestnut did not indicate, however, that another person in the same work environment or experience would develop Generalized Anxiety Disorder. Dr. Chestnut conceded that Generalized Anxiety Disorder is the most prevalent psychiatric disorder reported in the United States.

12. The Commission gives little weight to the opinions of Dr. Chestnut concerning causation and increased risk of plaintiff's mental condition. Dr. Chestnut stated that the focus of his treatment was to be supportive of plaintiff, that he could not speak to the validity of plaintiff's complaints about the school work, and that he only dealt with plaintiff's perceptions. There is no testimony in Dr. Chestnut's deposition that he reviewed any of plaintiff's employment records or that he considered any concurrent personal stressors in plaintiff's life in formulating his opinions.

13. Although plaintiff developed an anxiety disorder, her psychological condition was not the result of anything caused by defendant or because she was required to do anything unusual as a teacher. Plaintiff was in a stressful classroom environment that was caused by her inadequate job performance and inability to perform her job duties as a teaching professional. Considering all the evidence presented, the Commission finds that there was nothing unusual about plaintiff's job with defendant or what was expected of her as compared to any person similarly situated. The work plaintiff was asked to perform by defendant was the same kind of work any teacher is required to do. Plaintiff was merely asked to perform her job in the manner it should have been performed. Plaintiff was responsible for the bad environment in her classroom.

Plaintiff gave notice of appeal to this Court on the basis of the dissenting opinion, arguing that the majority in the Court of Appeals erred by affirming the Commission's decision that her GAD did not entitle her to workers' compensation benefits for an occupational disease pursuant to N.C.G.S. § 97-53(13). Relying upon the dissent, she contends that the majority erred: (1) by upholding the Commission's finding of fact that she was "responsible" for causing the injurious environment and by thereby relying upon fault to deny her claim; (2) by ignoring Dr. Chestnut's testimony and upholding the Commission's findings that her GAD centered around and was caused by problems with her principal and her substandard job performance;

and (3) by concluding that she failed to prove that her employment placed her at an increased risk of developing GAD.

[1] Plaintiff first asserts that the Court of Appeals majority "erred when it upheld the Commission's finding of fact that plaintiff was at fault in causing the injurious environment and relied upon that finding of fault as a basis for denial of [plaintiff's] claim." In connection with this, she discusses only finding of fact thirteen, quoted above, which does not use the word "fault," but does appear to attribute the cause of her allegedly disabling condition to her inability to control her class. Plaintiff contends that the Commission erred when it based its denial of workers' compensation benefits upon its finding that plaintiff was "responsible" for, or essentially at fault, in creating the hostile classroom environment and that the Court of Appeals majority erred by upholding the Commission based upon the same reasoning.

This Court has stated unequivocally that the Workers' Compensation Act was "intended to eliminate the fault of the workman as a basis for denying recovery" and that "[t]he only ground set out in the statute upon which compensation may be denied on account of the fault of the employee is when the injury is occasioned by his intoxication or willful intention to injure himself or another." *Hartley v. N.C. Prison Dep't*, 258 N.C. 287, 290, 128 S.E.2d 598, 600 (1962) (citations and internal quotation marks omitted); *see also* N.C.G.S. § 97-12 (2007). Thus, except as expressly provided in the statute (as in section 97-12, which is not involved here), fault has no place in the workers' compensation system. Although finding thirteen does not use the word "fault," any language in that finding implying that fault plays a role in determining the compensability of this claim is irrelevant and inappropriate. We expressly disavow any language from the Commission's opinion and that of the Court of Appeals which can be read as indicating that plaintiff's fault or responsibility for her condition—including specifically the Court of Appeals' statement that "plaintiff herself created the stressful work environment"—was a valid reason to deny her claim. *Hassell*, 182 N.C. App. at 12, 641 S.E.2d at 331 (majority). The General Assembly has not specified such as a basis for denial of a workers' compensation claim, and we decline to do so here.

[2] Plaintiff next argues that the Commission did not give sufficient weight to Dr. Chestnut's testimony on causation, specifically contending that the "specious reasons given by the Commission majority

**HASSELL v. ONSLOW CTY. BD. OF EDUC.**

[362 N.C. 299 (2008)]

do not indicate that it seriously considered or weighed Dr. Chestnut's testimony before rejecting it." Plaintiff also asserts that the testimony of Dr. Chestnut, who was the only expert to testify, clearly showed that he believed her GAD was caused by the hostile classroom environment and that there is no competent evidence in the record to support the Commission's finding and conclusion that her anxiety resulted instead from her difficulty with the principal. This argument centers on findings eleven and twelve, quoted above. We disagree with plaintiff's contentions.

The applicable standard of appellate review in workers' compensation cases is well established. Appellate review of an opinion and award from the Industrial Commission is generally limited to determining: "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citing *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)).

The Workers' Compensation Act and the decisions of this Court clearly state that the Commission is the sole judge of the credibility of the witnesses and the weight of the evidence. N.C.G.S. §§ 97-84 to -86 (2007); *Adams v. AVX Corp.*, 349 N.C. 676, 680-81, 509 S.E.2d 411, 413 (1998) (citing *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). Section 97-86 states that the award of the Commission "shall be conclusive and binding as to all questions of fact." N.C.G.S. § 97-86. This Court has explained that the Commission's findings of fact "are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *E.g., Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965) (per curiam). "Thus, on appeal, this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274 (citation omitted)). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* (citation omitted); *accord Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 553 (2000).

Here, plaintiff's claim for occupational GAD was filed under the catch-all disease provision of North Carolina's Workers' Compensa-

**HASSELL v. ONSLOW CTY. BD. OF EDUC.**

[362 N.C. 299 (2008)]

tion Act, which encompasses, "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C.G.S. § 97-53(13) (2007). In 1983 this Court explained definitively that this provision does not require that the disease originate exclusively from or be unique to the particular occupation. *Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 101-02, 301 S.E.2d 359, 369-70 (1983). Instead, a plaintiff worker satisfies the elements of this statute if she shows that her employment

> exposed [her] to a greater risk of contracting [the] disease than members of the public generally, and [that] the . . . exposure . . . significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors.

*Id.* at 101, 301 S.E.2d at 369-70. Since *Rutledge*, this two-pronged proof requirement for an occupational disease, increased risk and significant contribution, has been approved and applied repeatedly by this Court and the Court of Appeals. *E.g., Wilkins v. J.P. Stevens & Co.*, 333 N.C. 449, 453, 426 S.E.2d 675, 677 (1993); *James v. Perdue Farms, Inc.*, 160 N.C. App. 560, 562-63, 586 S.E.2d 557, 560-61 (2003), *disc. rev. denied*, 358 N.C. 234, 594 S.E.2d 191 (2004).

Plaintiff has the burden of proving that her claim is compensable under the Workers' Compensation Act and specifically here, that her claim qualifies as an occupational disease. *E.g., Henry v. A.C. Lawrence Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950) (citations omitted). In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (citations omitted). The Commission "may not wholly disregard competent evidence"; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission "may believe all or a part or none of any witness's testimony." *Harrell v. J.P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (citation omitted), *disc. rev. denied*, 300 N.C. 196, 269 S.E.2d 623 (1980); *see also Anderson v. N.W. Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951) (citing *Henry*,

**HASSELL v. ONSLOW CTY. BD. OF EDUC.**

[362 N.C. 299 (2008)]

231 N.C. 477, 57 S.E.2d 760); *accord Deese*, 352 N.C. at 116, 530 S.E.2d at 553. The Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted. *Morgan v. Thomasville Furn. Indus.*, 2 N.C. App. 126, 127-28, 162 S.E.2d 619, 620 (1968) (citing *Anderson*, 233 N.C. at 376, 64 S.E.2d at 268). Nor is the Commission required to offer reasons for its credibility determinations. In *Deese*, this Court stated:

> This Court in *Adams* [*v. AVX Corp.*] made it clear that the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another. The Commission's credibility determinations . . . cannot be the basis for reversing the Commission's order absent other error.

352 N.C. at 116-17, 530 S.E.2d at 553.

Here, while the Commission did include reasons for its credibility determinations in finding of fact twelve, it was not required to do so. After examining the record, we conclude that here, unlike in *Harrell*, 45 N.C. App. at 204-06, 262 S.E.2d at 835, the Commission considered the expert's testimony, but decided to afford it little weight, as it may do. Plaintiff's argument that the Commission improperly ignored Dr. Chestnut's opinion is without merit.

[3] Plaintiff's next argument, that the Commission's finding that "Dr. Chestnut explained that plaintiff's anxiety focused on her difficulty with the principal" is not supported by any competent evidence, also fails. Dr. Chestnut testified that plaintiff "was constantly in fear of not doing something, not pleasing somebody; you know, that fear was there, and . . . it's documented that . . . this is not satisfactory, this is not satisfactory." He further stated that plaintiff's "difficulties with her administrator . . . . increased her anxiety . . . . to push it to a clinical syndrome." While Dr. Chestnut did testify that what was going to happen with the children was where he "saw the greatest level of apprehension," this Court may not re-weigh the evidence, given that the Commission has already weighed the evidence, as is its role under statute. N.C.G.S. § 97-86; *Anderson v. Lincoln Constr. Co.*, 265 N.C.

at 434, 144 S.E.2d at 274; *Harrell*, 45 N.C. App. at 205, 262 S.E.2d at 835. This Court's duty is merely to determine whether the record contains any evidence tending to support the Commission's finding, and here, this portion of the Commission's finding is supported by competent evidence. *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274.

In sum, we conclude that the challenged portions of findings of fact eleven and twelve are supported by competent evidence and do not demonstrate that the Commission ignored Dr. Chestnut's testimony. Rather, the record shows that the Commission considered Dr. Chestnut's testimony and decided to give "little weight to [his] opinions . . . concerning causation and increased risk of plaintiff's mental condition."

[4] Once the Commission decided on the basis of lack of credibility and weight not to accept Dr. Chestnut's opinions, it determined that plaintiff had failed to carry her burden of establishing either increased risk or significant contribution as required by N.C.G.S. § 97-53(13), as explained by *Rutledge* and its progeny. Without Dr. Chestnut's opinions, plaintiff had no expert medical evidence to establish that her GAD was an occupational disease. *See, e.g., Click*, 300 N.C. at 167, 265 S.E.2d at 391. Consequently, the Commission properly concluded that "plaintiff did not prove that her mental illness is due to causes and conditions which are characteristic of and peculiar to her employment," and that she is "not entitled to compensation under . . . [section] 97-53(13)."

For the reasons stated above, the opinion of the Court of Appeals affirming the Commission's opinion is affirmed as modified herein.

MODIFIED AND AFFIRMED.

Justice TIMMONS-GOODSON, dissenting.

Because I believe that the majority has erroneously upheld the denial of workers' compensation benefits on the basis of fault or contributory negligence, I respectfully dissent.

While the majority disavows any language from the Commission premising compensability on the absence of fault, it fails to address whether the Commission and Court of Appeals majority relied on this erroneous premise. In acknowledging an error in the proceedings below, yet upholding the result, it appears that the majority's treatment of plaintiff's argument omits a piece of the puzzle.

**HASSELL v. ONSLOW CTY. BD. OF EDUC.**

[362 N.C. 299 (2008)]

The majority acknowledges that any language in Finding Thirteen implying that fault plays a role in determining compensability is "irrelevant and inappropriate." However, the majority fails to evaluate the impact of the application of this erroneous standard. In the wider scheme of our Workers' Compensation Act as well as in the context of this case, the omitted piece is neither inconsequential nor tangential.

We have previously observed that one of the purposes of our Workers' Compensation Act was to abolish the "unholy trinity" of employer defenses which generally precluded any recovery by the injured worker at common law: contributory negligence; assumption of risk; and the fellow-servant rule. *Pleasant v. Johnson*, 312 N.C. 710, 711, 325 S.E.2d 244, 246 (1985) (citation omitted). " 'Contributory negligence involves the notion of some fault or breach of duty on the part of the employee.' " *Hamilton v. S. Ry. Co.*, 200 N.C. 543, 561, 158 S.E. 75, 85 (citation omitted), *cert. denied*, 284 U.S. 636 (1931).

In this case, the critical finding that plaintiff argues, but which the majority largely sidesteps in its analysis, is Finding of Fact 13:

13. Although plaintiff developed an anxiety disorder, her psychological condition was not the result of anything caused by defendant or because she was required to do anything unusual as a teacher. Plaintiff was in a stressful classroom environment that was *caused by her inadequate job performance* and inability to perform her job duties as a teaching professional. Considering all the evidence presented, the Commission finds that there was nothing unusual about plaintiff's job with defendant or what was expected of her as compared to any person similarly situated. The work plaintiff was asked to perform by defendant was the same kind of work any teacher is required to do. Plaintiff was merely asked to perform her job in the manner it should have been performed. *Plaintiff was responsible for the bad environment in her classroom.*

(emphasis added). The above language reflects almost a textbook definition of contributory negligence, a defense that the Commission may not consider under our Workers' Compensation Act. The Conclusions of Law similarly reflect language that imputes fault to plaintiff and denies recovery on that basis:

2. Mental illness which results from failing to perform one's job duties . . . is not compensable . . . .

**BINNEY v. BANNER THERAPY PRODS., INC.**

[362 N.C. 310 (2008)]

3. In the present case, plaintiff's stress and anxiety disorder developed from her inability to perform her job in accordance with defendant's requirements.

Denying compensation on the basis of plaintiff's own fault is contrary to the provisions of the Workers' Compensation Act. *Hartley v. N.C. Prison Dep't*, 258 N.C. 287, 290, 128 S.E.2d 598, 600 (1962) ("[T]he various compensation acts were intended to eliminate the fault of the workman as a basis for denying recovery." (citations omitted)). The only exceptions to this rule concern intoxication or intentional injuries. *Id.*

Despite the explicit declarations of the majority, I fear that today's decision will open the door for future denials of workers' compensation benefits on the basis of the injured employee's own less than exemplary workmanship. Furthermore, such a spectacle will inevitably draw this Court into a morass of endless litigation seeking to separate innocent from blameworthy injuries.

This is exactly the situation the Workers' Compensation Act sought to avert by excluding common law defenses. *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003) ("[T]he North Carolina Workers' Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." (citing *Pleasant*, 312 N.C. at 712, 325 S.E.2d at 246-47)) Since I fear that today's ruling departs from that, I respectfully dissent.